# Exhibit A

**SUM-100**

# SUMMONS ON SECOND AMENDED COMPLAINT
## (CITACION JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA SAN FRANCISCO, SCHOOL OF DENTISTRY, DR. ANTHONY POGREL, In His Individual Capacity, DR. BRIAN BAST, In His Individual Capacity, and DOES 1-50, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
HIEU PHAM, DDS, MD

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org)*, the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*El nombre y dirección de la corte es):*

**CASE NUMBER**
*(Número del Caso):*
**CGC-17-560372**

SAN FRANCISCO COUNTY SUPERIOR COURT
400 MCALLISTER STREET
SAN FRANCISCO, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
CHARLES A. BONNER, ESQ. SB#85413      LAW OFFICES OF BONNER & BONNER
475 GATE FIVE ROAD, SUITE 212      (415)331-3070      FAX: (415) 331-2738
SAUSALITO, CA 94965

DATE: October 23, 2017      DEPUTY CLERK Clerk, by _____ , Deputy
*(Fecha)*      *(Secretario)*      EDNALEEN J. ALEGRE      *(Adjunto)*

For proof of service of this summons, use Proof of Service of Summons *(form POS-010)*.
*Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]      **NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:
   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]      CEB Essential Forms      ceb.com      **SUMMONS**      Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CHARLES A. BONNER, ESQ. SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE ROAD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFF
DR. HIEU PHAM

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**10/10/2017**
**Clerk of the Court**
BY:ANNA TORRES
**Deputy Clerk**

## SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

HIEU PHAM, DDS, MD,

           Plaintiff,

    vs.

BOARD OF REGENTS OF THE
UNIVERSITY OF CALIFORNIA SAN
FRANCISCO, SCHOOL OF DENTISTRY,
DR. ANTHONY POGREL, *In His Individual
Capacity,* DR. BRIAN BAST, *In His
Individual Capacity,* and DOES 1-50,
inclusive,

           Defendants.

**Case No.: CGC-17-560372**

**SECOND AMENDED
COMPLAINT FOR DAMAGES:**

**STATE CLAIMS:**
1. UNEQUAL PAY VIOLATION
   CALIFORNIA LABOR CODE § 1197.5
2. VIOLATION CALIFORNIA LABOR
   CODE SECTION 1102.5
3. RETALIATION UNDER FEHA
4. DISCRIMINATION UNDER FEHA
5. RETALIATION IN VIOLATION OF
   HEALTH & SAFETY CODE SECTION
   1278.5
6. BREACH OF COVENANT OF GOOD
   FAITH AND FAIR DEALING
7. CONSTRUCTIVE TRUST/FIDUCIARY
   DUTY
8. INVASION OF PRIVACY
9. BAD FAITH BREACH OF CONTRACT
   QUANTUM MERIT-UNJUST
   ENRICHMENT
10. NEGLIGENT HIRING, RETENTION,
    SUPERVISION, AND TRAINING;
11. INVASION OF PRIVACY
12. SLANDER
13. INTENTIONAL INFLICTION OF
    EMOTIONAL DISTRESS
14. LABOR CODE §201, §221, §223, §226,
    §218.5
15. COMMON COUNT WAGES DUE FOR

SERVICE HAD AND RECEIVED
16. NEGLIGENCE MISREPRESENTATION GOVERNMENT CODE SECTION 815.2
17. NEGLIGENCE  GOVERNMENT CODE SECTION 815.2
18. STATUTORY INTEREST ON UNPAID WAGES LABOR CODE § 218.6
19. INJUNCTIVE RELIEF

**<u>JURY TRIAL DEMANDED</u>**

PLAINTIFF HIEU PHAM, DDS, MD, an individual, alleges against DEFENDANTS as follows:

1. PLAINTIFF HIEU PHAM, DDS, MD (hereinafter "PLAINTIFF") is an adult natural person who is and was at all times relevant to this Complaint, a resident of San Francisco County, State of California.

2. DEFENDANT BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA SAN FRANCISCO, SCHOOL OF DENTISTRY (hereinafter "UCSF" or "EMPLOYER") is a governmental agency.

3. DEFENDANT DR. ANTHONY POGREL (hereinafter "DR.   POGREL") *In His Individual Capacity*. At all relevant time, DEFENDANT DR. ANTHONY POGREL is and was a managing agent of the Board of Regents of the University of California.

4. DEFENDANT BRIAN BAST (hereinafter "DR. BAST"), *In His Individual Capacity*. At all relevant time, DEFENDANT BRIAN BAST is and was a managing agent of the Board of Regents of the University of California.

5. PLAINTIFF is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise of DEFENDANT DOES 1 through 50 inclusive, and therefore sues these DEFENDANTS by such fictitious names. PLAINTIFF will seek leave to amend his complaint to allege their true names and capacities when the true names and capacities have been ascertained. PLAINTIFF is unaware of the true names of Defendants Does 1 through 50.

6. PLAINTIFF sues these DEFENDANTS by said fictitious names, and will amend this complaint when the true names and capacities are ascertained, when such facts pertaining to liability are ascertained, or as permitted by law or by the Court. PLAINTIFF is informed and believes that each of the fictitiously named DEFENDANTS is in some manner responsible for the events and allegations set forth in this complaint.

7. PLAINTIFF is informed, believes, and thereon alleges that at all relevant times, each DEFENDANT was an employer, was the principal, agent, partner, joint venture, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other DEFENDANTS, and was engaged with some or all of the other DEFENDANTS in a joint enterprise for profit, and bore such other relationships to some or all of the other DEFENDANTS so as to be liable for their conduct with respect to the matters alleged in this complaint.

8. PLAINTIFF is informed, believes, and thereon alleges that each DEFENDANT acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each DEFENDANT knew or should have known about, authorized, ratified, adopted, approved, controlled, and/or aided and abetted the conduct of all other DEFENDANTS. As used in this complaint, "DEFENDANT" means "DEFENDANTS and each of them," and refers to the DEFENDANTS named in the particular cause of action in which the word appears.

9. At all times mentioned herein, each DEFENDANT was the co-conspirator, agent, servant, employee, and/or joint venture of each of the other DEFENDANTS and was acting within the course and scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent of each of the other DEFENDANTS.

10. PLAINTIFF is informed, believes, and thereon alleges that at all times mentioned in this Complaint, DEFENDANTS were the agents and employees of their CO-DEFENDANTS, and in doing the things alleged in this Complaint were acting within the course and scope of their agency and employment and acted in such a manner as to ratify the conduct of their CO-DEFENDANTS.

## JURISDICTION AND VENUE

11. Venue is proper in this judicial district because DR. PHAM'S injuries, damages and harms, including the violation of DR. PHAM'S civil rights, occurred in this judicial district. Further, one or more of the DEFENDANTS reside, are headquartered and conduct business in this judicial district. DEFENDANTS are subject to suit in this Judicial District and regularly employ 15 or more persons.

### GENERAL ALLEGATIONS

12. PLAINTIFF DR. PHAM alleges that DEFENDANT BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA SAN FRANCISCO, SCHOOL OF DENTISTRY (hereinafter "UCSF" or "EMPLOYER"), DEFENDANT DR. ANTHONY POGREL (hereinafter, DEFENDANT DR. POGREL ), and DEFENDANT BRIAN BAST (hereinafter, DEFENDANT DR. BAST), through DEFENDANT Employer's managing agents, discriminated and retaliated against DR. PHAM for engaging in protected activity, including his complaints regarding DEFENDANTS' wrongful refusal to pay his earned wages when due. DR. PHAM also herein complains that DEFENDANTS maintained and implemented a Hostile Work Environment, and a series of wage schemes that caused DR. PHAM to be deprived of earned wages. DEFENDANTS had prior knowledge and notice that these wage schemes were illegal, violating state and federal law, but DEFENDANTS persisted and continue to persist in maintaining and implementing such illegal wage schemes, to the detriment of DR. PHAM.

13. At all relevant times, DR. PHAM is an employee of DEFENDANTS, acting in the normal course and scope of employment duties with DEFENDANTS.

### PARTIES

14. DR. PHAM is a citizen of the United States of America and is a resident of San Francisco, CA. At all times herein relevant, DR. PHAM was and is an employee of DEFENDANT UCSF.

15. DEFENDANT UCSF is a Division of the Government of the State of California and is incorporated under the Laws of the State of California. DEFENDANT UCSF does business in the City of San Francisco under the business name University of California San Francisco. UCSF

is located at 707 Parnassus Ave, San Francisco, CA 94143, and the DEFENDANT Board of Regents business mailing address is 1111 Franklin Street, 12th Floor, Oakland, CA 94607.

16. DEFENDANT DR. ANTHONY POGREL is a citizen of the United States of America and is a resident of San Francisco, CA. At all times herein relevant, DEFENDANT DR. ANTHONY POGREL was and is a managing agent of DEFENDANT UCSF.

17. DEFENDANT DR. BRIAN BAST is a citizen of the United States of America and is a resident of San Francisco, CA. At all times herein relevant, DEFENDANT BRIAN BAST was and is a managing agent of DEFENDANT UCSF.

## DOE DEFENDANTS

18. PLAINTIFF does not know the true names and capacities, whether individual, corporate, associate, or otherwise of DEFENDANT DOES 1 through 50 inclusive, and therefore sues these DEFENDANTS by such fictitious names. PLAINTIFF will seek leave to amend his complaint to allege their true names and capacities when the true names and capacities have been ascertained.

## RESPONDEAT SUPERIOR

19. All of the described conduct, acts, and failures to act are attributed to agents and managing agents of DEFENDANT UCSF. Said acts, conduct, and failures to act were within the scope of such agency and employment. At all times relevant herein, each participant was acting within the course and scope of his or her employment and agency.

20. Each DEFENDANT, at all relevant times, was acting as the agent and co-conspirator of the other, and each endorsed, ratified, encouraged, agreed with, and took overt acts to carry out and accomplish the illegal conduct, activities and schemes alleged herein. All illegal conduct by managing agents was endorsed, ratified, encouraged and agreed to by each DEFENDANT and was foreseeable, and DEFENDANTS, and each of them, had prior knowledge of said illegal conduct, rendering DEFENDANT EMPLOYER vicariously liable. DEFENDANTS are individually liable for the acts and omissions of each other, based on the facts that each DEFENDANT endorsed, ratified, encouraged, conspired and agreed to the illegal conduct as herein alleged.

1    21. DEFENDANT UCSF's Executive Leadership Team and Board Members, and each of
2  them, intentionally, willfully, and negligently failed to provide any oversight over DEFENDANT
3  UCSF and its managing agents to ensure compliance with all Federal and State laws, including,
4  but not limited to, laws mandating the timely, correct payment and record keeping of employees'
5  wages; laws mandating that employees work in an environment free of discrimination; and laws
6  mandating that employers refrain from retaliating against employees who participate in protected
7  activity, such as employees complaining about the untimely and inaccurate payment of wages.
8  DEFENDANT UCSF's Executive Leadership Team and Board Members, and each of them,
9  willfully failed to promptly collect and withhold taxes; and failed to pay and failed to withhold
10  income and employment taxes, including social security taxes, and other Federal Payroll tax
11  requirements.

12                    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13    22. PLAINTIFF has exhausted his administrative remedies by filing charges with
14  appropriate federal and state agencies, including the EEOC and the DFEH. Further, PLAINTIFF
15  will file this Claim as his lawsuit within the statutory period following the issuance of the Right-
16  to-Sue Letters from the EEOC and DFEH.

17    23.  PLAINTIFF filed discrimination charges with the EEOC on November 29, 2016 and
18  received a letter from stating the EEOC would also open a case with the DFEH.  The EEOC
19  Right-to-Sue letter from the US department of Justice was received on June 3, 2017.
20  PLAINTIFF completed a DFEH Right-to-Sue-Form on August 7, 2017 and received a letter
21  from the DFEH stating they were closing his case because of the request for a Right-to-Sue
22  letter. The DFEH Right-to-Sue letter was received on August 8, 2017, and now timely files this
23  action.

24                 **WORKERS' COMPENSATION EXCLUSIVITY DOES NOT APPLY**

25    24. Each and every wrongful, injurious, intentional, willful, discriminatory, harassing act
26  and failure to act by DEFENDANTS were not normal incidents of employment and were outside
27  the scope of the employment bargain. Thus, the Workers' Compensation exclusive remedy set

28

1  forth in California Labor Code § 3600 et seq. will not preempt or bar PLAINTIFF'S right to
2  recover for damages set forth herein.

3  **DAMAGES**

4  25.  As a direct and legal result of DEFENDANTS' conduct as set forth herein, DR. PHAM
5  has suffered, and continues to suffer, substantial losses in earnings, significant loss of reputation,
6  severe mental, and emotional distress, humiliation, loss of enjoyment of life, misery,
7  inconvenience, anxiety, discomfort, fear, and professional injury, loss of promotional
8  opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, loss
9  of future earnings and benefits, cost of suit, embarrassment and anguish, all to his economic and
10 non-economic damage in an amount according to proof.

11 **STATEMENT OF FACTS**

12 26.  DR. PHAM has been employed as a half-time senior dentist in DEFENDANT UCSF's
13 Department of Oral and Maxillofacial Surgery since August 6, 2001. DR. PHAM has a contract
14 with DEFENDANT DR. ANTHONY POGREL, the Department Chairman, to be employed as a
15 50% Senior Dentist, to provide two days of clinical service. In return, the department is to pay
16 DR. PHAM at the top level of the senior dentist salary scale with full benefits (medical, dental,
17 vision, paid vacation, sick leave), cover DR. PHAM's expenses for four (4) meetings up to
18 $16,000, pay for DR. PHAM's dues (medical and dental licenses, AAOMS & Cal AOMS) and
19 subscription costs (Esthetic Surgery Journal, OMFS Clinics of NA, Facial Plastic Surgery of
20 NA). DR. PHAM's salary, benefits and expenses are paid by the clinical income DR. PHAM
21 generates from patient care.

22 27.  DR. PHAM has been employed with the department for more than 15 years and has
23 made significant contributions in teaching, patient care and clinical productivity. Even though
24 DR. PHAM is a 50% faculty, he brings in more clinical income than the full time surgeons.

25 28.  DR. PHAM has developed innovative techniques that allow cranial bone to be
26 harvested safely and efficiently in an office setting. DR. PHAM is the first and only surgeon who
27 has harvested cranial bone in an office setting at UCSF.

28

SECOND AMENDED COMPLAINT FOR DAMAGES                    Case No.: CGC-17-560372
7

29. DR. PHAM is the first faculty member to perform in-office hip graft for implant reconstruction. This procedure has benefited patients, residents and faculty. Implant patients with large bone deficit can now be reconstructed with a hip graft without the cost of an operating room and hospitalization. DR. PHAM has trained the staff and residents on how to set up for and assist in this procedure effectively. Now, other faculty members are benefiting from working with a well-trained staff, without whom a hip graft cannot be performed in an office setting. This has also greatly benefited dentally-crippled patients who cannot wear dentures and do not have enough bone to support implants without a large bone graft. Now these patients can be reconstructed with dental implants, thanks to the feasibility of in-office hip grafts.

30. Because of the large number of complicated bone graft cases, DR. PHAM has developed anesthetic techniques that allow these longer cases to be carried out safely and effectively in the office setting. Patients, residents and faculties have all benefited from these techniques.

31. DR. PHAM has modified the traditional tibial harvesting technique so that it allows this procedure to be carried out safely and effectively in an office setting. He popularized the tibial graft procedure used not only for sinus lift but also for the Onlay Graft. This allows patients who have failed non-autogenous grafts to be reconstructed with autogenous grafts. DR. PHAM developed special techniques to harvest ramus grafts, which lower the risks of inferior alveolar nerve injury.

32. DR. PHAM made the D1201-UCSF Oral & Facial Surgical Center into the central hub of implant reconstruction for the dental school. This is where Northern California patients can get world-class implant reconstructive surgery. This is evidenced by the referral pattern that DR. PHAM developed in department D1201. Drs. Finzen, Sharma, and Setia refer the bigger implant reconstructive cases to DR. PHAM. The former Dean, Dr. Bertolami, preferentially refers patients to DR. PHAM as the expert for implant reconstruction at UCSF. Other faculty members routinely ask for DR. PHAM's help in difficult cases. For example, DEFENDANT DR. BAST, the department's current chairman, asked for DR. PHAM's help on a bone graft case in which he had failed twice. DEFENDANT DR. BAST also referred his most difficult trauma patient to DR.

PHAM to correct the post traumatic facial deformities he was not able to fix. On November 30, 2016, DR. PHAM discovered that DEFENDANT DR. BAST billed and took credit for the work on a patient that DR. PHAM had actually performed, depriving DR. PHAM of his income from this surgery. DEFENDANT DR. BAST billed $7,000.00 for the surgery that was performed by DR. PHAM. DEFENDANT DR. BAST did not have the skill to perform the repair of the patient's zygomatic complex fracture. He failed to completely repair the deformities. DEFENDANT DR. BAST then referred this patient to DR. PHAM to correct the severe deformities. DR. PHAM was not credited, nor did he receive any payment for this most difficult surgery.

33. DR. PHAM has developed and improved surgical techniques to predictably augment atrophic alveolar ridges by harvesting ramus, tibia, iliac crest and cranial bone in the office setting, reducing the cost and morbidity to the patients. DR. PHAM has also made significant contributions in resident and student training, as well as improving the academic and clinical reputations of DR. PHAM's Department and the University. Dean Charles Bertolami has recognized DR. PHAM's expertise in implants and referred patients to DR. PHAM. Even though DEFENDANT DR. POGREL, the former chairman, does not want to publicly acknowledge DR. PHAM's expertise in implant reconstruction, he has obviously acknowledged it privately because both he and his wife selected DR. PHAM when they needed implants.

### BACK WAGES DUE AND OWING

34. In addition to DR. PHAM's irreplaceable roles as clinician, surgeon, and teacher, DR. PHAM has also contributed greatly to the department's fiscal health. Although DR. PHAM is paid only as a half-time senior dentist, over the last 15 years DR. PHAM has brought in more clinical revenue to the department than any other faculty member. On average, faculty members in the department receive a salary that is equivalent to 55% of his or her income-generated collections. In contrast, DR. PHAM's salary is only 23% of his collections. The highest revenue generated by a full time faculty member is that of DEFENDANT DR. BAST, the current chairman. He brought in $4,945,332 (from August 1, 2003 to December 31, 2015). The former chairman, DEFENDANT DR. POGREL, in a full time position, brought in $3,866,812. The

former vice chairman, Dr. Richard Smith, in a part time position, brought in $189,977 in that same period of time and drew $526,637 in salary. DR. PHAM, in a half-time position, generated the most clinical income of any faculty, namely $4,991,882.

35.     DR. PHAM was told by Chairman DEFENDANT DR. POGREL that DR. PHAM's salary would be at the top end of the "senior dentist" salary scale because he is a specialist, and because of the large income he brings into the department. In addition, the department would also cover DR. PHAM's expenses for four (4) meetings (approximately $16,000) annually, in addition to DR. PHAM's medical and dental license fees, subscriptions, and association dues. DR. PHAM was told by DEFENDANT DR. POGREL on numerous occasions that DR. PHAM's salary would be adjusted when the University increased this salary range so that he would always be paid at the highest level of a senior dentist. Per DEFENDANT DR. POGREL's verbal and written communications, "should this salary scale change, a revised honorarium of understanding shall be issued." A revised salary scale was implemented for all the other physicians, but not for DR. PHAM. DR. PHAM's salary has not been kept commensurate with that level. DR. PHAM has not received an honorarium of understanding since April 12, 2006.

36.     In late 2004 and early 2005, DEFENDANT DR. POGREL offered DR. PHAM a full-time position in the department. DEFENDANT DR. POGREL verbally communicated to DR. PHAM that this job would pay $239,600 (4 x the base salary $59,900=$239,600), but when DR. PHAM asked for a written contract, DEFENDANT DR. POGREL reduced the offer by $42,100 to $197,500.

37.     After this unsuccessful bid to convince DR. PHAM to accept a full time position, DEFENDANT DR. POGREL agreed to pay DR. PHAM at the highest level of the senior dentist pay scale, evidenced by the Statements of Proposed Compensation below (dated April 4, 2005, June 16, 2005, and April 12, 2006).

38.     Per UCSF Central HR record, there was a salary increase for senior dentists on October 1, 2007, increasing from $179,900 to $210,400. This was a significant jump of $30,500.

Per DR. PHAM's contract with DEFENDANT DR. POGREL, the department should have increased DR. PHAM's salary accordingly, but did not do so.

39. Since October 1, 2007, DR. PHAM's salary has stopped being at the top of the senior dentist salary scale, the lower pay representing a breach of the contract DR. PHAM had agreed to with DEFENDANT DR. POGREL. DR. PHAM informed DEFENDANT DR. POGREL of this breach of contract in December, 2011. DEFENDANT DR. POGREL's response was that DR. PHAM was already paid at the highest level of staff dentist. This was blatantly false.

40. DEFENDANT DR. POGREL colluded with Dr. Richard Smith to misinform DR. PHAM about the senior dentist pay scale. Both lied to DR. PHAM, asserting that it would take 20 years to get to the top of the senior dentist pay scale, and yet at the same time DEFENDANT DR. POGREL had clearly told DR. PHAM that he was already at the highest level for a senior dentist. DEFENDANT DR. POGREL informed DR. PHAM that he was at step 6 of the Senior Dentist pay scale. This representation by DEFENDANT DR. POGREL was false.

41. There are no steps in the Senior Dentist pay scale. The dentist pay scale has only 3 Levels: minimum, middle and maximum. DR. PHAM had been paid at the maximum level since July 1, 2004 because of the amount of income he brought into the department. According to the Dentist Salary range provided by UCSF HR, there was a $30,500 increase on October 1, 2007, but DEFENDANT DR. POGREL failed to send DR. PHAM a revised honorarium of understanding and did not appropriately increase DR. PHAM's salary.

42. The Excel spreadsheet below shows that DEFENDANT DR. POGREL has failed to fulfill the contract since October 1, 2007, and DR. PHAM has been underpaid by more than $144,719.06. DR. PHAM hereby demands this back pay plus interest, and full enforcement of the contract which stipulates that "the department pay DR. PHAM at the top level of the senior dentist salary scale, cover DR. PHAM expenses for four (4) meetings amounting to $16,000, dues (medical and dental licenses, AAOMS & Cal AOMS) and subscriptions (Aesthetic Surgery Journal, OMFS Clinics of NA, Facial Plastic Surgery of NA)."

43.     The Salary History for DR. HIEU D. PHAM'S ("HDP") monthly salary Max of Sr. Dentist Salary Range full time HDP's monthly salary per agreement@ 50% Amount HDP was underpaid per indicated period:

| Date | Year Salary received | Reason for increase | Monthly Salary Received | Highest Annual Senior Dentist (SD) 100% | Salary per Agreement @ 50% SD | Unpaid Wages |
|---|---|---|---|---|---|---|
| 8/6/01 | $140,000 | hired | | $153,200.00 | | |
| 10/1/02 | $142,100 | not IDed | | $160,900.00 | | |
| 7/1/04 | $160,900 | equity | $6,704.17 | $160,900.00 | $6,704.17 | Paid @highest level |
| 7/1/05 | $167,900 | Merit | $6,995.83 | $167,900.00 | $6,995.83 | Paid @highest level |
| 10/1/05 | $173,356 | Merit | $7,223.17 | $173,800.00 | $7,241.66 | Paid @highest level |
| 10/1/06 | $179,424 | Merit | $7,476.00 | $179,900.00 | $7,495.83 | Paid @highest level |
| 10/1/07 | $186,001 | Merit | $7,750.04 | $210,400.00 | $8,766.67 | Below highest level |
| 12 mos | | | | | | (12,199.56) |
| 10/1/08 | $186,001 | | $7,750.04 | $210,400.00 | $8,766.67 | Below highest level |
| 12 mos | | | | | | (12,199.56) |
| 10/1/09 | $186,001 | | $7,750.04 | $210,400.00 | $8,766.67 | Below highest level |
| 9 mos | | | | | | (9,149.67) |
| 7/1/10 | $186,001 | | $7,750.04 | $210,400.00 | $8,766.67 | Below highest |

| | | | | | | |
|---|---|---|---|---|---|---|
| 7 mos | | | | | | (7,116.41) |
| 2/1/11 | $186,001 | | $7,750.04 | $218,100.00 | $9,087.50 | Below highest level |
| 5 mos | | | | | | (6,687.30) |
| 7/1/11 | $192,199 | Merit | $8,008.29 | $224,600.00 | $9,358.33 | Below highest level |
| 24 mos | | | | | | (32,400.96) |
| 7/1/13 | $197,965 | Merit | $8,248.54 | $235,800.00 | $9,825.00 | |
| 12 mos | | | | | | (18,917.52) |
| 7/1/14 | $202,518 | Merit | $8,438.25 | $247,600.00 | $10,316.67 | |
| 12 mos | | | | | | (22,541.04) |
| 7/1/15 | $207,986 | Merit | $8,666.08 | $255,000.00 | $10,625 | |
| 12 mos | | | | | | (23,507.04) |
| 7/1/16 | $263,000 | equity | | $263,000.00 | $10,958.34 | |
| Total Unpaid Paid Wages to July 1, 2016 **Recent HR Evidence as of December 2, 2016 shows the total amount owed is $ 177,327.00** | | | | | | ($144,719.06) |

44.     DEFENDANT DR. POGREL has, on an ongoing basis, created a hostile work Environment for DR. PHAM. In 2005, during a salary negotiation, DEFENDANT DR. POGREL physically pushed DR. PHAM out of his office because he did not want to increase DR. PHAM's salary and refused to give DR. PHAM a "Z" factor (bonus/ incentive) for DR. PHAM's high collections during 2003-2005. DEFENDANT DR. POGREL claimed that the University's policy prevented paying DR. PHAM any higher than the top level of senior dentist and that DR. PHAM was not allowed a "Z" factor. A "Z" factor is a bonus/incentive paid for individual performance. DR. PHAM was given a "Z" factor of $8000 on October 8, 2002 by DEFENDANT POGREL for annual collection of $182,568, and he was led to believe that a "Z" factor would be given for equal or better performance in subsequent years. After 2 years as 50% time senior dentist, DR. PHAM's clinical practice grew to the biggest practice in the department because of DR.

1  PHAM's excellent surgical skills, his devotion to patients and his hard work. Instead of giving

2  DR. PHAM a bonus for his extraordinary performance, contribution to residency training and

3  financial contribution to the department's fiscal health, DEFENDANT DR. POGREL physically

4  pushed DR. PHAM out of his office and banned DR. PHAM from department meetings. DR.

5  PHAM informed Vice Chair Dr. Richard Smith of this physically assaultive pushing incident.

6  Vice Chair Dr. Smith advised DR. PHAM to report the incident. Fearful of retaliation, DR.

7  PHAM did not report the incident, but Dr. Richard Smith informed DR. PHAM that he, Dr.

8  Smith, did report the assaultive pushing incident to DEFENDANT DR. POGREL's last

9  Stewardship review committee. Since the report by Dr. Smith, DEFENDANT DR. POGREL has

10  engaged in a relentless campaign of retaliation against DR. PHAM, exemplified by the following

11  acts of retaliatory harassment.

12  <u>**ACTS OF RETALIATION**</u>

13  45.    DEFENDANT DR. POGREL instructed his secretary, Connie D'Aura, to open DR.

14  PHAM's personal mail from the California Dental Board, on Dec 19, 2011. DEFENDANT DR.

15  POGREL falsely claimed that he had opened it out of concern that DR. PHAM might have

16  "missed" an important deadline. DR. PHAM was present and working on campus that day, so if

17  there was a concern, DEFENDANT DR. POGREL's secretary could have easily brought the

18  mail to DR. PHAM. DEFENDANT DR. POGREL also intentionally opened a letter that did

19  contain confidential communication from the California Dental Board. He did NOT open a

20  license renewal letter that arrived a few months earlier, so his defense about concern about a

21  "missed" deadline was not legitimate and was false.

22  46.    DEFENDANT DR. POGREL gave a very positive evaluation of DR. PHAM in October

23  2011.

24  **Evaluation of Hieu Pham, 10/17/11**
   **DR. PHAM continues to be a valuable resource to the Department of Oral and**

25  **Maxillofacial Surgery He is clinically very active and is carrying out procedures at a very**
   **high level which are not being performed by other full-time faculty members In**

26  **particular, his abilities with autogenous bone grafting are much appreciated by patients,**
   **residents, and faculty a like As a staff dentist, DR. PHAM s responsibilities are**

27  **primarily clinical dentistry which he carries out at a very high level with exceptional**
   **patient satisfaction He has excellent diagnostic skills and excellent clinical abilities, seeks**

28  **consultations appropriately, and has the appropriate moral and ethical values that one**

would expect from a health care professional DR. PHAM does not give any formal lectures but has given them in the past, but he does carry out excellent one on-one teaching with the residents which they much appreciate In his role as a staff dentist, DR. PHAM consistently exceeds expectations for his performance and fully deserves a merit increase.

Signed "M Anthony Pogrel, DDS, M D , F R C S , F A C S
Chair, Department of Oral and Maxillofacial Surgery

47. Contrary to DEFENDANT DR. POGREL's positive evaluation, approximately three (3) months later, on or about January 24, 2012, DEFENDANT DR. POGREL publicly humiliated DR. PHAM at the UCSF International Symposium on OMFS in front of DR. PHAM's colleagues. DEFENDANT DR. POGREL claimed in public and in the presence of Dr. Paul Hall that he and Dr. Mehran Hossaini thought that DR. PHAM should be fired, because DR. PHAM was not entering treatments on the computer but had the staff doing treatment plan entry, and that patients and staffs were supposedly complaining about DR. PHAM. DEFENDANT DR. POGREL's public announcement of private HR matters in the presence of Dr. Paul Hall was an illegal and actionable invasion of privacy. It is well established in California Law that employees enjoy a right of privacy under Article 1 Section 1 of the California Constitution in their employment affairs, and that matters which are pertaining to Human Resources are protected by this right of privacy.

48. DEFENDANT DR. POGREL and Dr. Hossaini expected DR. PHAM to do clerical work, knowing and understanding that the time spent doing clerical work would adversely affect DR. PHAM's productivity as a surgeon. During faculty meetings, DEFENDANT DR. POGREL and Dr. Hossaini had asked the faculty to enter charges and treatment plans electronically. However, since DEFENDANT POGREL had barred DR. PHAM from faculty meetings, DR. PHAM had no knowledge of this issue. As a further act of retaliation, DEFENDANT DR. POGREL never informed DR. PHAM of these changes which were announced during faculty meetings, nor did DEFENDANT DR. POGREL provide DR. PHAM with training to implement the changes. Instead, DEFENDANT DR. POGREL and Dr. Hossaini claimed that DR. PHAM acted unprofessionally because DR. PHAM did not follow through with changes he knew nothing about.

49. DR. PHAM usually dictates a treatment plan letter on all implant and bone graft patients. The staff enters the treatment plans into the system when patients call to schedule surgery. Transferring the responsibilities from the staff to the faculty members does not represent an

efficient use of time. Dr. Hossaini claimed that the faculty members should enter charges and treatment plan to avoid mistakes and "in order to improve the efficiency and safety of our patient care". This is a clear example of poor leadership and management. The leadership should direct the clinic manager to make sure that the staff members are trained to do their jobs. Instead, DEFENDANT DR. POGREL's solution for inadequately trained staff is to hire more staff or have faculty members do the staff's jobs. Apparently he wants the doctors, who can otherwise generate hundreds of dollars an hour for the department, to do clerical work for which the supporting staff has been hired. DR. PHAM believes that this makes the department inefficient.

50. In addition to the retaliation, DEFENDANT DR. POGREL often has taken credit for DR. PHAM's work. DR. PHAM performed a perfect nasal reconstruction on DEFENDANT DR. POGREL's patient (WH), but DEFENDANT DR. POGREL forbade DR. PHAM to let the patient know that the nasal reconstruction had in fact been performed by DR. PHAM, and not by DEFENDANT DR. POGREL who took credit for it. DEFENDANT DR. POGREL categorically lied to DR. PHAM that DR. PHAM is paid at the highest level of senior dentist. On or about February 2012, DR. PHAM checked with central HR and discovered that his salary was not at the highest level of senior dentist, as stipulated per his contract. DEFENDANT DR. POGREL actively concealed the facts regarding DR. PHAM's salary for several years, since October 1, 2007. When DR. PHAM pointed out to DEFENDANT DR. POGREL that he was not paid at the highest level of senior dentist as per his contract, DEFENDANT DR. POGREL again lied to DR. PHAM by claiming that DR. PHAM was at step 6 of the Senior Dentist salary range, further falsely claiming that DR. PHAM could only move up one step every two years, and that in order for DR. PHAM to be at the top of senior dentist salary range, DR. PHAM would have to have 20 years of service.

51. On February 1, 2012, Central HR confirmed to DR. PHAM that the senior dentist position is NOT a step-based position, but a salary range based position, and that DR. PHAM was paid at the highest level of senior dentist on July 1, 2004. Since October 1, 2007, the HR department failed to adjust DR. PHAM's salary at the highest level of senior dentist.

52. Every time DR. PHAM has engaged in a salary discussion with DEFENDANT DR. POGREL, DEFENDANT DR. POGREL has engaged in misrepresentations, misinformation and intimidation to force DR. PHAM to accept whatever DEFENDANT DR. POGREL dictated. DR. PHAM's appointment is based on a 50% time position as a Senior Dentist. In DR. PHAM's

contract, he is to provide two (2) days of patient care. This has been the arrangement for the past 15 years. The new Department Chair, DEFENDANT DR. BAST, has tried to change this agreement. When DR. PHAM complained to DEFENDANT DR. BAST that the department has been underpaying DR. PHAM, DEFENDANT DR. BAST instead instructed DR. PHAM to come in an increased 2.5 days in order to maintain DR. PHAM's benefits. "Half time" is two clinic days and "fulltime" is 4 clinic days. DR. PHAM's clinic income from two (2) clinic days a week is more than enough to cover DR. PHAM's salary and benefits, as evidenced by the department compensation plan performance.

### RETALIATION BY DEFENDANT DR. BRIAN BAST

53. DR. PHAM met with DEFENDANT DR. BAST in his office on Wednesday, January 27, 2016, in order to inform him that the department has been underpaying him even though he brings in the highest clinical income in the department. DR. PHAM asked DEFENDANT DR. BAST to honor the contract DR. PHAM has had with the department since July 1, 2004. The agreement DR. PHAM had with the department is to provide 2 days of patient care. In return the department will pay him 50% of the highest senior dentist salary scale with full benefits (medical, dental, vision, paid vacation, sick leave), cover his expenses for four (4) meetings (up to $16,000), pay his dues (medical, dental licenses, AAOMS & Cal AOMS) and subscription costs (Esthetic Surgery Journal, OMFS Clinics of NA, Facial Plastic Surgery of NA). DR. PHAM's salary, benefits and expenses are paid by the clinical income DR. PHAM generates from patient care.

54. On May 18, 2016, Dr. Derek Park, Dr. Chirag Patel and DR. PHAM met with DEFENDANT DR. BAST and raised serious concerns about substandard patient care being rendered by a white female surgeon, Dr. P. They expressed to DEFENDANT DR. BAST that Oral Surgeons are being scrutinized for their ability to safely provide anesthesia and operate simultaneously after two anesthetic related deaths occurred in the last two (2) years in the San Francisco Bay Area. They expressed to DEFENDANT DR. BAST that oral surgeons must police themselves and protect the public from incompetent surgeons.

55.     On March 23, 2016, surgeon Dr. P. was scheduled for an onsite General Anesthesia Evaluation and Examination, but Dr. P. was unable to insert the IV and the patient went into an acute asthmatic attack, necessitating the patient to be transferred to the emergency department for treatment. Dr. P. tried to coerce a resident to put the IV in for this patient, and he refused because this procedure was an examination. DR. PHAM and the other doctors related all these facts to DEFENDANT DR. BAST. Also, during the meeting with DEFENDANT DR. BAST, DR. PHAM and the other doctors reported, complained and informed DEFENDANT DR. BAST of the following facts: that Dr. P. should not performing general anesthesia and surgery on patients because she was unable to place the IV. They reported that Dr. P. demonstrated on numerous occasions that she did not have the skill to place an IV and had to ask other providers to place an IV on her patients. General Anesthesia ("GA") permits are only granted to providers who can demonstrate that they can safely put patients to sleep and operate at the same time. During this examination, Dr. P. demonstrated that she did NOT have the ability to place an IV on a conscious patient with normal blood pressure, let alone an unconscious patient with low blood pressure. DR. PHAM and the other doctors pointed out to DEFENDANT DR. BAST that this examination case demonstrated her lack of professional judgment in regard to which patients can be safely put to sleep, and operate at the same time. She failed to select the right patient for her GA exam. DR. PHAM explained to DEFENDANT DR. BAST that this was the first time in his 22 years in the OMFS department that a GA evaluation had to be aborted because the provider did not possess the skills to place an IV and did not have the knowledge to select a patient who can safely be put to sleep, and operate at the same time. After this aborted case, Dr. P. then sought out only examiners she knew personally. On May 16, 2016, Dr. P. had to perform a GA onsite evaluation with her former supervising surgeons, Dr. Rebeka Silva and Dr. Thad Connelly. Dr. P. struggled to place the IV on her patient. Finally she got it in after 45 minutes. It took her nearly an hour to take out a single tooth, an extraction which only should have taken 5 to 10 minutes to complete.

56.     DR. PHAM complained to DEFENDANT DR. BAST that he should have vetted Dr. P. better before he hired her. DR. PHAM further explained that she was one of the worst

residents who could neither perform surgery nor place an IV. DR. PHAM added that she had no business training residents, when many of the residents provided much better patient care than she did. DR. PHAM suggested to DEFENDANT DR. BAST that he might want to contact her prior boss about incidents of substandard patient care she had provided at her prior job. DR. PHAM explained that in one case, she fractured a patient's jaw after taking out a tooth. She did not know how to fix the fractured jaw and had to refer it to Dr. Carr, a dentist two years her junior in residency training, to fix the patient's fractured jaw. The treatment of a jaw fracture is a very basic procedure that every oral surgeon should know how to perform, yet she does not. In another incident at her prior employment, she tried to take out a wisdom tooth but could not manage to take it out and had to call a surgeon from private practice to complete the case.

57.     In another case at UCSF, Dr. P. also attempted to take out a wisdom tooth but was not able to take it out, and after approximately two (2) hours, she called Dr. Carr who had to complete the case. In a separate incident, she attempted to take out a bicuspid but could not complete it, and a resident had to take the tooth out for her. DR. PHAM informed DEFENDANT DR. BAST of the above incidents and told him that she was a liability for the University and put the patients at risk. DEFENDANT DR. BAST informed DR. PHAM that he had hired her to oversee the students' cases and to take out teeth on oral cancer patients. DR. PHAM replied that in that case, DEFENDANT DR. BAST was putting these unfortunate patients in double jeopardy, first of dying from their cancer diagnosis; and then being at high risk of poor outcomes by allowing Dr. P. to perform their extractions.

58.     DEFENDANT DR. BAST expressed antagonism toward the Doctors complaining about Dr. P., and he exhibited extreme hostility against DR. PHAM for bring these patient safety issues to his attention. Despite all these serious incidents, DEFENDANT DR. BAST insisted that she was a good surgeon, falsely accusing DR. PHAM of orchestrating all these negative complaints against her.

59.     DEFENDANT DR. BAST, and each DEFENDANT, retaliated against DR. PHAM after that meeting on May 18, 2016 with Dr. Derek Park, Dr. Chirag Patel and DR.

PHAM regarding their fears and concerns about substandard patient care being rendered by Dr. P.

60.     DEFENDANT DR. BAST had informed DR. PHAM in March, 2016 that he would restore DR. PHAM's salary back up to the highest level of the senior dentist pay scale and that DR. PHAM would receive a retroactive pay raise. DEFENDANT DR. BAST has failed to retroactively increase DR. PHAM's pay as promised. Instead, on August 12, 2016, DEFENDANT UCSF notified and informed DR. PHAM that DEFENDANT UCSF is investigating him for "acts of serious misconduct in the violation of the UC Non-discrimination and Affirmative Action Policy." The allegations the University made against DR. PHAM are as follows:

"You have repeatedly engaged in hostile behavior toward Dr. [J. P]. based on her gender, including publicly criticizing her to faculty, staff, and students, spreading false rumors about her to faculty, staff and students, and discrediting her professional competence to faculty, staff and students; and

You have colluded with faculty, staff and/or residents to limits Dr.[ P's] career opportunities, reduce her ability to generate revenue, and/or force her out of the Department of Oral Maxillofacial Surgery ("OMFS") because of her gender, including encouraging faculty, staff and residents not to assist or work with Dr.[ P.] and making false claims to Dr. Brian Bast and others that Dr. P. is incompetent."

61. DEFENDANTS, and each of them, know these accusations are completely untrue.

62.

63. At the time, DR. PHAM was a 50% part-time faculty and staff dentist. He did not hold any supervisorial role in the department. He did not have the authority to, nor did he, assign residents or staff to their schedules. Dr. P's incompetence is well known and documented in the department. All the faculty and staff know that she can't place an IV, can't reliably take out teeth, and is relying on the residents to do her work for her. She has cancelled cases when the residents are not available to do her surgeries for her.

64. DEFENDANTS, and each of them, know that patient safety is a matter of public concern and a concern of all private citizens. DR. PHAM, as a private citizen, reported Dr. P's substandard patients' care and treatment to DEFENDANTS, and rather than taking steps to protect the patients, DEFENDANTS, and each of them, retaliated and discriminated against DR. PHAM, in violation of state and federal law.

65. In a letter dated February 17, 2017, DEFENDANT DR. BAST threatened to reduce DR. PHAM's appointment schedule as follows:

"...effective March 24, 2017, in addition to your Monday and Wednesday time in the OMFS clinic, you will also provide clinical service at the OMFSA Faculty clinic, Suite D1201, on Friday from 1pm to 5pm. You are to be generally available as the clinic requires, although as an exempt employee, greater emphasis is placed on meeting the responsibilities assigned to your position...

If, by March 24, 2017, you fail to work your full 50% appointment assigned schedule as directed and you continue to only maintain your Monday and Wednesday clinic service, your appointment will be reduced to 40% effective March 27, 2017."

66. Despite DR. PHAM working two days of direct patient care a week and a half-day of administration duties (fulfilling a 50% work appointment), as well as providing additional off-hour contact information for his patients, on April 4, 2017, DR. PHAM received a letter from Cecelia Lucero, Human Resource Generalist of UCSF Human Resources Department stating the following changes to DR. PHAM's appointment:

'This letter is to notify you that as previously informed, your Senior Dentist (Title Code 0774) position is being reduced from 50% to 40% effective March 27, 2017.
...eligible employees whose appointment is reduced below 50% no longer accrue vacation or sick leave. Therefore, you will stop accruing vacation and sick leave hours as of March 27, 2017."

## DISCRIMINATION

67. DEFENDANTS, and each of them, treat DR. PHAM differently and discriminatorily on the basis of his national origin, Vietnamese, gender, and because he engaged in protected activity, including complaining about substandard patient care, patient safety and the conditions of the dental school. DR. PHAM is the only faculty member of Vietnamese National Origin. DEFENDANTS have treated the other faculty members of American or different national origin more favorably than DR. PHAM, without any business or legitimate purpose. For example, DEFENDANT POGREL has not engaged in conduct such as assault towards any other faculty member, nor has he denied any other faculty member equal pay. DEFENDANTS treat a female faculty member more favorably than DR. PHAM, excusing her incompetent patient care and

treatment, while publicly but falsely criticizing DR. PHAM's care and treatment of patients. This is illegal discrimination on the basis of gender.

68. DR. PHAM, Dr. Derek Park and Dr. Chirag Patel complained to DEFENDANT DR. BAST about one faculty member's incompetence and substandard patient care and treatment. Rather than taking corrective actions against this faculty member to improve patient care and treatment for the protection of patients, DEFENDANTS launched a barrage of retaliating actions against DR. PHAM, including further denial of his request for equal pay commensurate with the pay of other faculty members, and changed DR. PHAM's employment contract in the middle of the year.

### FIRST CAUSE OF ACTION
#### UNEQUAL PAY VIOLATION
#### CALIFORNIA LABOR CODE § 1197.5
#### (Against UCSF)

69. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

70. California Equal Pay Act - California Labor Code § 1197.5 states: " (a) No employer shall pay any individual in the employer's employ at wage rates less than the rates paid to employees of the opposite sex in the same establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where the payment is made pursuant to a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any bona fide factor other than sex. (b) Any employer who violates subdivision (a) is liable to the employee affected in the amount of the wages, and interest thereon, of which the employee is deprived by reason of the violation, and in an additional equal amount as liquidated damages...."

71. DEFENDANT UCSF treated DR. PHAM disparately, differently, discriminatorily in compensation or in terms, conditions, or privileges of employment. Such discrimination was motivated by DR. PHAM's national origin and gender, male. DR. PHAM's gender was a "motivating reason" for DEFENDANTS' illegal and unlawful conduct because his gender is one

of the reasons that contributed to the DEFENDANT'S decision to take certain adverse action, even though other reasons also may have contributed to DEFENDANT"S decisions.

72. Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

## SECOND CAUSE OF ACTION
### VIOLATION CALIFORNIA LABOR CODE SECTION 1102.5
**(Against Defendant Employer UCSF)**

73. PLAINTIFF incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

74. DEFENDANT UCSF took adverse employment action against DR. PHAM in violation of California Labor Code Section 1102.5 by retaliating against DR. PHAM for engaging in statutorily protected activity. PLAINTIFF'S protected activity included, but is not limited to, the following: complaining to HR that he was discriminated against by not being paid equal pay. Also, DR. PHAM complained to DEFENDANTS, and each of them, that he had not been paid wages at the same increased percentage rates as other faculty members for the past 12 years, since 2004.

75. As a direct and legal result of DEFENDANTS' illegal and retaliatory conduct, as set forth herein, PLAINTIFF has suffered and continues to suffer substantial economic and non-economic damage, in an amount according to proof.

76. Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

## THIRD CAUSE OF ACTION
### RETALIATION UNDER FEHA
**(Against Defendant Employer)**

77. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

78. California Fair Employment and Housing Act, and specifically, California Government Code § 12940 (h) prohibits "any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

79. Defendant UCSF is an employer under the definition under Title VII and the California Fair Employment and Housing Act ("FEHA") because this employer regularly employs more than 15 employees. DR. PHAM has been employed as an employee by Defendant UCSF since August 6, 2001 and was at all relevant times herein an employee of Defendant UCSF. DR. PHAM has suffered, and continues to suffer, numerous adverse employment actions, as herein alleged above, and DR. PHAM's protected status, National Origin, Gender, Whistleblower against substantial patient care and treatment, were motivating reasons for adverse employment action. DR. PHAM was harmed, and DEFENDANT UCSF'S adverse employment actions were substantial factors in causing DR. PHAM's injuries, losses, damages and harm.

80.     DEFENDANT UCSF, through its managing agents at UCSF, took adverse employment actions against DR. PHAM in violation of the California Fair Employment and Housing Act by retaliating against DR. PHAM for his participation in statutorily protected activities. DR. PHAM's protected activities include, but are not limited to, his complaints to HR and to his supervisors, DEFENDANT DR. POGREL and DEFENDANT DR. BAST, regarding DEFENDANTS' denial of his equal pay.

81.     DEFENDANT UCSF'S adverse employment action against DR. PHAM, as herein alleged, was unprivileged, unlawful, and without any legitimate business purpose.

82.     As a direct and legal result of DEFENDANT UCSF'S retaliatory conduct as set forth herein, DR. PHAM has suffered and continues to suffer substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and benefits, cost of suit, embarrassment and anguish, all to his economic and non-economic damage in an amount according to proof.

83.     Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

**FOURTH CAUSE OF ACTION**
DISCRIMINATION IN VIOLATION OF FEHA
**(Against Defendant Employer)**

84. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full. California Fair Employment and Housing Act, and specifically, California Government Code § 12940 (a) provides it is an unlawful employment practice: "For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or sexual orientation of any person, ...or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

85. DEFENDANTS, and each of them, treated DR. PHAM differently, discriminatorily, disparately because of his race and national origin, including denying him his civil right to "make and enforce contracts,...and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." DEFENDANT UCSF denied DR. PHAM, Vietnamese, and National Origin of Vietnam, the same contract benefits, terms and conditions of employment as that enjoyed by "white citizens" and other non-Vietnamese citizens.

86. DEFENDANTS' actions of discrimination and .retaliation against DR. PHAM in the terms, conditions and benefits of his contract have caused and continue to cause him substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, loss of future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

87. Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

### FIFTH CAUSE OF ACTION
RETALIATION IN VIOLATION OF
HEALTH & SAFETY CODE SECTION 1278.5
(Against Defendant UCSF)

88. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full California Health & Safety Code Section 1278.5 states: "No health facility shall discriminate or retaliate, in any manner, against any patient, employee, member of the medical staff, or any other health care worker of the health facility because that

person has done either of the following: (A) Presented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity. (B) Has initiated, participated, or cooperated in an investigation or administrative proceeding related to, the quality of care, services, or conditions at the facility that is carried out by an entity or agency responsible for accrediting or evaluating the facility or its medical staff, or governmental entity. (2) No entity that owns or operates a health facility, or which owns or operates any other health facility, shall discriminate or retaliate against any person because that person has taken any actions pursuant to this subdivision."

89.     On May 18, 2016, DR. PHAM and other doctors provided DEFENDANT DR. BAST with a detailed description of substandard patient care and treatment by one of the faculty members. In his complaint, DR. PHAM provided facts concerning substandard patient care and safety to the administration and supervisors.

90.     DEFENDANTS retaliated against DR. PHAM by falsely accusing DR. PHAM of gender harassment of this faculty member. DEFENDANT DR. BAST retaliated against DR. PHAM by withdrawing the retroactive pay raised that he verbally agreed to with DR. PHAM in March of 2016 and by changing DR. PHAM's long standing employment agreement with the department, from 50% time employment of 2 clinic day a week to 2.5 days a week, as well as making DR. PHAM document on a monthly basic what he does with the added half day. Other full time faculty members, on their contracts, are only required to provide 4 days of patient care a week and are not required to document what they do on the other one day. DEFENDANT DR. BAST changed DR. PHAM's long-standing employment agreement in the middle of the year. The academic year started on July 1, 2016, and DEFENDANT DR. BAST emailed DR. PHAM the new employment expectation on September 9, 2016, in retaliation to his report of an incompetent surgeon, appointed by DEFENDANT DR. BAST without a search committee.

91. DEFENDANT UCSF, through its managing agents at UCSF, retaliated against DR. PHAM for engaging in a protected activity. This adverse employment action was a direct result

of DR. PHAM's protected activity and is therefore retaliation.

92. DEFENDANTS' actions of discrimination and retaliation against DR. PHAM in the terms, conditions and benefits of his contract have caused and continue to cause him substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, loss of future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

93. Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

### SIXTH CAUSE OF ACTION
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Defendant Employer UCSF)

94. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

95. DEFENDANT UCSF breached the covenant of good faith and fair dealing which California Law imposes in every contract, requiring parties to engage in good faith and fair dealing so as to permit parties to a contract to enjoy the benefits of the bargain. DEFENDANT UCSF engaged in bad faith and unfair dealing by violating state and federal laws with respect to failing to pay the wages earned, due, and owing to DR. PHAM.

96. Further, DEFENDANTS breached the covenant of good faith and fair dealing by retaliating, discriminating, disciplining (excluding him from faculty meetings) DR. PHAM without good cause. Further, DEFENDANTS breached the covenant of good faith and fair dealing with DR. PHAM by converting DR. PHAM's wages, and by retaliating against DR. PHAM.

97. As a direct and legal result of DEFENDANTS ' illegal and retaliatory conduct as set forth herein, DR. PHAM has suffered and continues to suffer substantial economic and non-economic damage in an amount according to proof.

98. Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

### SEVENTH CAUSE OF ACTION
### CONSTRUCTIVE TRUST/FIDUCIARY DUTY

(Against All Defendants)

99. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

100.    DEFENDANT UCSF, and its managing agents, and Board of TRUSTEES are "Responsible Persons" under the Federal Law: Employment Taxes and the Trust Fund Recovery Penalty Act (TFRP). The TFRP may be assessed against any person who is **responsible** for collecting or paying withheld income and employment taxes, or for paying collected excise taxes, and **willfully fails** to collect or pay them. A *responsible person is a person or group of people who has the duty to perform and the power to direct the collecting, accounting, and paying of trust fund taxes.* This person may be an officer or an employee of a corporation; A member or employee of a partnership; A corporate director or shareholder; *A member of a board of trustees of a nonprofit organization;*

101.    DEFENDANTS UCSF, and its managing agents, and Board of Directors **failed to pay wages due and owing to DR. PHAM, due to willful mischaracterization of DR. PHAM's employee status.** As a direct result of the illegal mischaracterization of DR. PHAM's employee status, DEFENDANT UCSF, its managing agents, and Board of Trustees **failed to** collect or pay Employment and Payroll Taxes on unpaid wages.

102.    DEFENDANT UCSF, its managing agents and Board of Trustees breached this constructive trust and the fiduciary duty owed to DR. PHAM by failing to pay, failing to withhold Employment tax for the benefit of DR. PHAM and converting DR. PHAM's wages held in a constructive trust for Plaintiff. As Responsible Parties, DEFENDANT UCSF, its managing agents and Board of Trustees, and each of them, are personally liable for all the back wages, plus penalties, interest and attorneys' fees incurred by DR. PHAM.

103.    At all relevant times giving rise to this complaint for unpaid wages and damages, DEFENDANT UCSF, its managing agents and Board of Trustees, knew, or should have known, that Wages are not Ordinary Debts. Both California and federal courts have established the principle that wages are not ordinary debts. They are preferred over all other claims because of the economic position of the average worker and his/her dependence on the regular payment of wages for the necessities of life. *IWC v. Superior Court Kern UCSF* (1980) 27 Cal.3d 690; In a

later case of *Boothby v. Atlas Mechanical*, (1992) 6 Cal.App.4th 1595, 1601, the court noted that under California law, wages "are jealously protected by statutes for the benefit of employees."

104.    At all relevant times giving rise to this complaint for unpaid wages and damages, DEFENDANT UCSF, and its managing agents and Board of Trustees, knew, or should have known, that LABOR CODE § 215 provides for Criminal Sanctions For Violation Of Payment Laws: "Any person, or the agent, manager, superintendent or officer thereof, who violates any provision of Sections 204, 204b, 205, 207, 208, 209, or 212 is guilty of a misdemeanor." LABOR CODE § 216 – Refusal To Pay Wages: In addition to any other penalty imposed by this article, any person, or an agent, manager, superintendent, or officer thereof is guilty of a misdemeanor, who:(a) Having the ability to pay, willfully refuses to pay wages due and payable after demand has been made.(b) Falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself, his employer or other person, any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due.

105.    At all relevant times giving rise to this complaint for unpaid wages and damages, DEFENDANT UCSF, its managing agents and Board of Trustees, knew, or should have known, that Labor Code § 226.6. states: A criminal violation may be referred to the city or district attorney against not only the employer, but "any officer, agent, employee, fiduciary, or other person who has the control, receipt, custody, or disposal of, or pays, the wages due any employee, and who knowingly and intentionally participates or aids in the violations of any provisions of Labor Code §§ 22 6 or 226.2."

106.    As a direct and legal result of DEFENDANTS ' illegal and retaliatory conduct as set forth herein, DR. PHAM has suffered and continues to suffer substantial economic and non-economic damage in an amount according to proof.

107.    DEFENDANT UCSF'S managing agent, DEFENDANT DR. POGREL, acted with malice, oppression and fraud, with the deliberate intent to injure DR. PHAM, entitling DR. PHAM to punitive damages to protect the public and other similarly situated employees.

108.    Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

SECOND AMENDED COMPLAINT FOR DAMAGES                    Case No.: CGC-17-560372
29

**EIGHTH CAUSE OF ACTION**
INVASION OF PRIVACY
AND VIOLATION OF ARTICLE 1 OF CALIFORNIA CONSTITUTION
**(Against all Defendants)**

109.     DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

110.     The California Constitution, Article 1, Section 1, the "DECLARATION OF RIGHTS", allows: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and **privacy**."

111.     Article 1 Section 1 of the California Constitution provides each citizen with the right of privacy in their affairs, including their financial, employment and economic records. On or about January 24, 2012, DEFENDANT DR. POGREL humiliated DR. PHAM at the UCSF International Symposium on OMFS in front of DR. PHAM's colleagues. DEFENDANT DR. POGREL broadcast in public and in the presence of Dr. Paul Hall and another surgeon that supposedly Dr. Mehran Hossaini thought that DR. PHAM should be fired and that patients and staff were complaining about DR. PHAM. DEFENDANT DR. POGREL's public announcement of private HR matters in the presence of Dr. Paul Hall and another doctor was an illegal and actionable invasion of privacy. It is well established in California Law that employees enjoy a right of privacy under Article 1 Section 1 of the California Constitution in their employment affairs and that matters which are pertaining to Human Resources matters are protected by this right of privacy.

112.     DEFENDANTS' actions of invading the privacy of DR. PHAM have caused and continue to cause him substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, loss of future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

113.   Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

**NINTH CAUSE OF ACTION**
BAD FAITH BREACH OF CONTRACT
QUANTUM MERIT-UNJUST ENRICHMENT
**(Against Defendant Employer UCSF)**

SECOND AMENDED COMPLAINT FOR DAMAGES          Case No.: CGC-17-560372

114.     DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

115.     DEFENDANT UCSF, its managing agents and Board of Trustees will contend that they entered into a contract with DR. PHAM under which he agreed to provide dental duties in exchange for the amount he was in fact paid. At all relevant times giving rise to this complaint for unpaid wages and damages, DEFENDANT UCSF, its managing agents and Board of Trustees, knew, or should have known, that such a "contract" is a CONTRACT AGAINST PUBLIC POLICY. There are a number of statutes in the Labor Code which specifically prohibit contracts between employers and employees on certain subjects. Examples of actions which have been declared to be against "public policy" is any contract to release a claim for wages entered into before those wages have been paid (Lab or Cod e § 206 .5). Labor Code § 219: Private Agreement May Not Contravene Pay Provisions, and no provision of the Labor Code can in any way be contravened or set aside by a private agreement, whether written, oral or implied. The specified times when wages must be paid, as established by the Labor Code, may not be set aside by a private agreement.

116.     DEFENDANT UCSF and its managing agents have failed to pay DR. PHAM all back wages dating back to October 1, 2007, the date DR. PHAM agreed to work as a dentist for the benefit and value his dental services conferred on Defendant UCSF'S business. Under a special equity doctrine, the law implies a promise to pay for benefits or services rendered even though no such promise was ever made or intended. *Mc Call v. Superior Court* (1934) 1 Cal.2d 527, 531, These implied in-law contracts, also called quasi-contracts, are distinct from true contracts since they lack an essential element such as consent, either express or implied. Additionally, unlike the contractual remedy for damages, e.g., wages, a quasi-contractual remedy is in the nature of restitution, or quantum merit, for the reasonable value of the benefit or services. A benefit to another is conferred by request, since these factors can make the benefit unjust.

117.     DEFENDANT UCSF is legally obligated to pay DR. PHAM the reasonable value of his services, which is the amount of any and all increases in salaries as enjoyed by other similarly situated dentists and faculty members.

118.     The Fair Labor Standards Act (FLSA) is the federal labor and employment law which governs the payment of wages to employees. The FLSA is enforced by the Department of Labor (DOL) Wage and Hour Division. Starting in 2009, the federal government has significantly increased the budget of the DOL Wage and Hour Division, resulting in many more wage and hour audits. Employers who are found to have violated the FLSA may be liable for unpaid wages or unpaid overtime compensation. In addition, the employer may be required to pay a penalty equal to the amount it underpaid the employee.

119.     As a direct and legal result of DEFENDANTS' illegal and retaliatory conduct as set forth herein, PLAINTIFF has suffered and continues to suffer substantial economic and non-economic damage in an amount according to proof.

120.     DEFENDANT UCSF, its managing agents and Board of Trustees, and each of them, acted with malice, oppression and fraud, with the deliberate intent to injure DR. PHAM, entitling DR. PHAM to punitive damages against individual DEFENDANTS to protect the public and other similarly situated employees.

121.     Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

**TENTH CAUSE OF ACTION**
NEGLIGENT HIRING, RETENTION, SUPERVISION, TRAINING
**(Against Defendant Employer UCSF)**

122.     DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

123.     DEFENDANT UCSF negligently hired, retained, managed, controlled, supervised, and trained its managers. But for this negligent hiring, retaining, managing, controlling, supervising and training, the PLAINTIFF and similarly situated employees would have not been subjected the illegal conduct described and alleged herein. DEFENDANTS unreasonably failed to train, manage, and supervise DEFENDANTS' HR Manager and other

managers in the proper and humane manner in which to supervise employees. DEFENDANTS, and each of them, breached this legally imposed duty.

124.    As a direct and legal result of DEFENDANTS' illegal and retaliatory conduct as set forth herein, PLAINTIFF has suffered and continues to suffer substantial economic and non-economic damage in an amount according to proof.

125.    Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

## ELEVENTH CAUSE OF ACTION

INVASION OF PRIVACY
VIOLATION OF FOURTH AMENDMENT U. S. CONSTITUTION
**(Against Defendant Dr. Pogrel and UCSF)**

126.    DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

127.    DEFENDANTS violated DR. PHAM's privacy rights, which are stated in the U. S. Constitution: Fourth Amendment to the U. S. Constitution: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

128.    From December 19, 2011 up to, and including to date, DEFENDANTS, including UCSF's managers, agents, and employees, have engaged in an energetic pattern and practice of invading the privacy of DR. PHAM by making public statements to employees who were not Human Resource managers, falsely accusing DR. PHAM of being derelict in his employment duties; making public statements disclosing confidential information which should have been limited only to H.R. Administration.

129.    On or about January 24, 2012, DEFENDANT DR. POGREL humiliated DR. PHAM at the UCSF International Symposium on OMFS in front of DR. PHAM's colleagues. DEFENDANT DR. POGREL broadcast in public and in the presence of Dr. Paul Hall and another surgeon that Dr. Mehran Hossaini thought that DR. PHAM should be fired and that

patients and staff were complaining about DR. PHAM. DEFENDANT DR. POGREL's public announcement of private HR matters in the presence of Dr. Paul Hall and another surgeon was an illegal and actionable invasion of privacy. DEFENDANTS' publication of private information as herein alleged, concerning DR. PHAM, the publicity of which any reasonable person in DR. PHAM's position would consider highly offensive, was conduct which DEFENDANTS knew or should have known was injurious. DEFENDANTS acted with reckless disregard of the fact that the private information was not of legitimate public concern or did not have a substantial connection to a matter of legitimate public concern. DEFENDANTS' conduct was a substantial factor in causing DR. PHAM to suffer shame, humiliation, mental and emotional distress, loss of enjoyment of life, other harmful and injurious effects and non-economic damages.

130.    DEFENDANTS' actions have caused and continue to cause DR. PHAM substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and benefits, costs of suit, embarrassment an anguish, all to his damage in an amount according to proof.

131.    As to DEFENDANT DR. POGREL only, the acts of this DEFENDANT, as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure DR. PHAM and to cause him mental anguish, anxiety, and distress. DEFENDANT'S acts were done in conscious disregard of the risk of severe emotional harm to PLAINTIFF and with the intent to injure, constituting oppression, fraud, and malice under California Civil code §3294. DEFENDANT DR. POGREL's despicable, vile and malicious conduct warrants an award to DR. PHAM of punitive damages to protect the community and to deter this type of injurious conduct in the future.

132.    Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

### TWELFTH CAUSE OF ACTION
SLANDER
### (Against Dr. Anthony Pogrel and UCSF)

133.    DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

SECOND AMENDED COMPLAINT FOR DAMAGES                   Case No.: CGC-17-560372

134.    DEFENDANTS made numerous defamatory statements, slandering DR. PHAM to individuals who had no right to know of any such coincidental, private information concerning DR. PHAM. The various employees who received these slanderous publications, which falsely accused him of dereliction of his employment duties, reasonably understood that the statements were only pertaining to DR. PHAM. Such publicly slanderous statements were Slander Per Se because they injured DR. PHAM in his profession as a dentist. DEFENDANTS failed to use reasonable care to determine the truth or falsity of the statements.

135.    As to DEFENDANT DR. POGREL only, the acts of this DEFENDANT, as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure DR. PHAM and to cause him mental anguish, anxiety, and distress. DEFENDANT'S acts were done in conscious disregard of the risk of severe emotional harm to DR. PHAM and with the intent to injure, constituting oppression, fraud, and malice under California Civil Code §3294, entitling DR. PHAM to punitive damages against this DEFENDANT only.

136.    Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

### THIRTEENTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Against Dr. Bast and Dr. Pogrel)**

137.    DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

138.    DEFENDANT DR. BAST AND DR. POGREL engaged in extreme and outrageous conduct by retaliating against DR. PHAM for his participation in a statutorily protected activity, including complaining about patient care and safety in the exercise of his United States Constitution First and Fourteenth Amendments rights of Free Speech and Liberty. DEFENDANTS' conduct violates public policy as such and should not be tolerated in a civilized society.

139.    DEFENDANTS' conduct was intentional and caused DR. PHAM to suffer severe emotional distress. As to DEFENDANT DR. BAST AND DR. POGREL only, the acts of these DEFENDANTS, as alleged herein, were intentional, outrageous, despicable, oppressive,

1  fraudulent, and done with ill will and intent to injure DR. PHAM and to cause him mental
2  anguish, anxiety, and distress.  DEFENDANTS' acts were done in conscious disregard of the
3  risk of severe emotional harm to DR. PHAM and were a substantial factor in causing harm,
4  damage, and injuries and committed with the intent to injure, constitution oppression, fraud, and
5  malice under California Civil Code §3294, entitling  DR. PHAM to punitive damages against
6  these DEFENDANTS only.

7      140.    Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

8  **FOURTEENTH CAUSE OF ACTION**
   LABOR CODE §201, §221, §223, §226, §218.5
9  **(Against All Defendants)**

10     141.    DR. PHAM incorporates by reference herein the preceding paragraphs of the
11 complaint as though set forth here in full.

12     142.    DEFENDANTS' conduct of failing to pay the employee's wages violated Labor
13 Code  §221, providing that it is unlawful for an employer to collect or receive from an employee
14 any part of the wages already paid to that employee; Labor Code §223 making it "unlawful to
15 pay less than any contract or statute requires, while purporting to pay the required wage; Labor
16 Code §226 providing that employers must provide an itemized breakdown each time the
17 employer makes deductions from an employee's paycheck; and Labor Code §218.5 (a): "In any
18 action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension
19 fund contributions the court shall award reasonable attorney's fees and costs."

20     143.    As a direct and legal result of DEFENDANTS' illegal and retaliatory conduct as
21 set forth herein, PLAINTIFF has suffered and continues to suffer substantial economic and non-
22 economic damage in an amount according to proof.

23     144.    DEFENDANTS DR. BAST AND DR. POGREL, and each of them, acted with
24 malice, oppression and fraud, with the deliberate intent to injure DR. PHAM, entitling DR.
25 PHAM to punitive damages to protect the public and other similarly situated employees.
26     Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

27 **FIFTEENTH CAUSE OF ACTION**
28 COMMON COUNT

SECOND AMENDED COMPLAINT FOR DAMAGES          Case No.: CGC-17-560372
36

WAGES DUE FOR SERVICE HAD AND RECEIVED
(Against Defendant Employer)

145.    DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

146.    "To recover on a claim for the reasonable value of services under a quantum merit theory, a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." (*Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 794 [9 Cal.Rptr.3d 734], internal citation omitted.) "[W]here services have been rendered under a contract which is unenforceable because not in writing, an action generally will lie upon a common count for quantum merit." (*Iverson, Yoakum, Papiano & Hatch v. Berwald* (1999) 76 Cal.App.4th 990, 996 [90 Cal.Rptr.2d 665].) "Although such an action is one at law, it is governed by principles of equity. It may be brought 'wherever one person has received money [or services] which belongs to another, and which "in equity and good conscience," or in other words, in justice and right, should be returned. . . .[or compensated for]. The plaintiff's right to recover is governed by principles of equity, although the action is one at law.'"(*Mains v. City Title Ins. Co.* (1949) 34 Cal.2d 580, 586 [212 P.2d 873], internal citations omitted.)

147.    DEFENDANT UCSF requested by contract and conduct that DR. PHAM perform services as a dentist, faculty member and surgeon for the benefit of Defendant UCSF School of Dentistry.  DR. PHAM performed the contracted services as agreed and requested; DEFENDANT UCSF has not paid DR. PHAM for the services rendered. The reasonable value of DR. PHAM's services that were provided and are yet unpaid, is $144,719.06.

148.    Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

### SIXTEENTH CAUSE OF ACTION
NEGLIGENCE MISREPRESENTATION
GOVERNMENT CODE SECTION 815.2
**(Against Defendant Employer)**

149. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

150. California Government Code Section **815.2.** (a) provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

151. DEFENDANT DR. POGREL, at all times while operating within the course and scope of his employment, owed a duty of care to DR. PHAM to pay earned wages and to provide true and accurate pay records.

152. DEFENDANTS, and each of them, breached their duty to DR. PHAM by failing to pay earned wages and by misclassifying the status of DR. PHAM's employment in order to avoid paying legally required wages.

153. Per UCSF Central HR record, there was a salary increase for senior dentists in October 1, 2007 from $179,900 to $210,400. This was a significant $30,500 jump. Per DR. PHAM's contract with DEFENDANT DR. POGREL, the department should have increased DR. PHAM's salary accordingly, but did not do so.

154. Since October 1, 2007, DR. PHAM's salary has stopped being at the top senior dentist salary scale, representing a breach of the contract DR. PHAM had with DEFENDANT DR. POGREL. DR. PHAM informed DEFENDANT DR. POGREL of this breach of contract in December, 2011. DEFENDANT DR. POGREL's response was that DR. PHAM was already paid at the highest level of staff dentist. This is blatantly false.

155. DEFENDANT DR. POGREL colluded and conspired with Dr. Richard Smith to misinform DR. PHAM about the senior dentist pay scale. DEFENDANT DR. POGREL falsely represented to DR. PHAM that it takes "20 years to get to the senior dentist pay scale", and at the same time told DR. PHAM that DR. PHAM was at the highest level for a senior dentist. DEFENDANT DR. POGREL represented to DR. PHAM that he was at step 6 of the Senior Dentist pay scale. DEFENDANT DR. POGREL's representation, again, was false.

156. DR. PHAM justifiably relied to his detriment on the representation of his supervisor, DEFENDANT DR. POGREL. DR. PHAM's salary is equivalent to 23% of the clinical revenue

he generates while the average salary of other faculty is equivalent to more than 50% of the clinical revenue they generate.

157. DEFENDANTS' misrepresentations, inducing justifiably reliance on such misrepresentation by DR. PHAM regarding the terms, conditions and benefits of his contract have caused and continue to cause him substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, loss of future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

158. Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

## SEVENTEENTH CAUSE OF ACTION
### NEGLIGENCE
### GOVERNMENT CODE SECTION 815.2
### (Against Defendant Employer)

159. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

160. California Government Code Section 815.2. (a) provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

161. DEFENDANT DR. POGREL owed a duty of care to DR. PHAM to pay earned wages and to provide true and accurate payment records. DEFENDANTS, and each of them, breached their duty to DR. PHAM by failing to pay earned wages and by misclassifying the status of DR. PHAM's employment in order to avoid paying legally required wages.

162. DEFENDANT DR. POGREL owed a duty of care to DR. PHAM to avoid making false, slanderous, defamatory statements, which he knew were false. DEFENDANT DR. POGREL breached this duty, and was negligent by making false statements in the presence of other dentists regarding DR. PHAM's care of patients. DEFENDANT DR. POGREL's

1   unprivileged defamatory statements expose him personally to civil liability and therefore, are

2   creating liability for DEFENDANT UCSF.

3   163. As a direct and legal result of DEFENDANTS ' negligence as set forth herein,

4   PLAINTIFF has suffered and continues to suffer substantial economic and non-economic

5   damage in an amount according to proof.

6   164. Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

7   **EIGHTEENTH CAUSE OF ACTION**
    STATUTORY INTEREST ON UNPAID WAGES

8   Labor Code § 218.6

9   **(Against Defendant UCSF)**

10  165. DR. PHAM hereby incorporates each and every allegation contained in this Complaint

11  above and re-alleges said allegations as though fully set forth herein.

12  166. California Labor Code § 218.6 states: "In any action brought for the nonpayment of

13  wages, the court shall award interest on all due and unpaid wages at the rate of interest specified

14  in subdivision (b) of § 3289 of the Civil Code, which shall accrue from the date that the wages

15  were due and payable as provided in Part 1 (commencing with Section 200) of Division 2."

16  167. Subdivision (b) of § 3289 of the California Civil Code states: "If a contract entered into

17  after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest

18  at a rate of 10 percent per annum after a breach."

19  168. DR. PHAM demands interest on the amount of wages due weekly at the rate of 10%

20  per annum as required by law.

21  **NINETEENTH CAUSE OF ACTION**
    **(For Injunctive Relief)**

22
23  169.    DR. PHAM incorporates by reference herein the preceding paragraphs of the

24  complaint as though set forth here in full.

25  170.    DR. PHAM will suffer irreparable injury if DEFENDANTS are not required to

26  reinstate DR. PHAM'S position as Senior Dentist (Title Code 0774) from 40% to 50% and return

27  all of his accrued benefits lost and earned since March 27, 2017, while the suit is pending.

28  171.    In the letter dated April 4, 2017 from Cecelia Lucero, UCSF Human Resources

SECOND AMENDED COMPLAINT FOR DAMAGES                Case No.: CGC-17-560372
40

Generalist regarding DR. PHAM'S Appointment Change, she states:

"Please note that your medical and welfare benefits eligibility may be impacted."

172.    This statement creates severe anxiety and worry associated with uncertainty and confusion about current benefits, potential lack of benefits, availability of accrued sick pay, loss of personal time-off, risks to PLAINTIFF'S and his family's health and financial hardship. Dr. Pham discovered that the change to his position from 50% to 40% caused a monthly $2,000 pay cut, loss of accrued sick and vacationed pay, and medical, dental and vision benefits. The district court held that plaintiffs had demonstrated irreparable harm by showing that, absent an injunction ordering Honeywell to provide premiums sufficient to secure guaranteed levels of benefits, "the reductions in medical coverage will cause: (1) substantial risk to plaintiffs' health; (2) severe financial hardship; (3) the inability to purchase life's necessities; and (4) anxiety associated with uncertainty." *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 (2d Cir. 2004)

173.    DR. PHAM has no adequate remedy at law to prevent reoccurrence of such discriminatory practices, or to prevent continued retaliation for complaining of, and objecting to, such discriminatory practices. DR. PHAM has already suffered repeated discriminatory practices and retaliation from DEFENDANTS and these actions have no monetary remedy.

174.    DR. PHAM has a substantial likelihood of success on the merits of his case for retaliation based on his engaging in protected activity because DR. PHAM complained about professional misconduct, fraudulent billing, medical malpractice, substandard patient care, safety, and the conditions of the dental clinic whereby patients were at risk of serious injury or death based on the incompetence of Dr. P.

175.    The harm to DR. PHAM if the injunction were not granted greatly outweighs the harm that would be sustained by UCSF if the preliminary injunction were granted. If DR. PHAM or a member of his family were to become ill or had a medical emergency, the impact to his income and the expenses are unknown and could potentially put his home and livelihood at risk.

The risk to UCSF is completely insignificant because they would simply return to delivering the level of benefits previously afforded to DR. PHAM in all of his previous years of employment.

176.    The injunctive relief would not adversely affect public policy or the public interest.

177.    DR. PHAM respectfully asks the Court to set a hearing for his application for preliminary injunction at the earliest possible time, and after hearing the request, to grant a permanent injunction against DEFENDANTS.

## PUNITIVE DAMAGES

178. DEFENDANTS DR. POGREL and DR. BAST'S acts, as alleged herein, as to all causes of action, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure DR. PHAM and to cause him mental anguish, anxiety, and distress. DEFENDANTS' acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure, constituting oppression, fraud, and malice under California Civil Code §3294, entitling PLAINTIFF to punitive damages against these individual DEFENDANTS only.

## PRAYER FOR RELIEF

179.    Wherefore, Plaintiff prays for judgment against Defendants, and each of them as follows:

1.    For general damages in an amount according to proof;

2.    For special damages in an amount according to proof;

3.    For prejudgment interest in an amount according to proof;

4.    For reasonable attorney's fees and cost of suit therein required by statute;

5.    For punitive damages in the amount of $3,000,000.00 each as to DEFENDANT DR. POGREL and DEFENDANT DR. BAST, or 9% of the net worth of each Defendant, whichever is greater.

6.    For statutory penalties and any other statutory relief;

7.    For $3,000,000.00 in compensatory damages, including physical injuries creating mental and emotional misery;

SECOND AMENDED COMPLAINT FOR DAMAGES                Case No.: CGC-17-560372

42

8.    For all sums due for back pay, plus interest.

9.    Interest at the legal rate of 10% per annum from each weekly payment of wages due to Plaintiff

10.   Restitution and injunctive relief for Plaintiff

11.   A written contract specifying that a 50% Senior Dentist constitutes two clinic days a week, with benefits to be covered by clinical income generated.

12.   Any excess clinical revenues to be set aside for professional travel, CEs and equipment

13.   For such other and further relief as the court may deem proper;

14.   Plaintiff hereby demands a trial by jury.

**JURY TRIAL DEMANDED**

DATED: October 4, 2017

RESPECTFULLY SUBMITTED
LAW OFFICES OF BONNER & BONNER

A. CABRAL BONNER, ESQ.
ATTORNEY FOR PLAINTIFF

SECOND AMENDED COMPLAINT FOR DAMAGES
43

Case No.: CGC-17-560372

# Exhibit B

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

HIEU PHAM DR

PLAINTIFF (S)

VS.

BOARD OF REGENTS OF THE UNIVERSITY
OF CALIFORNIA et al

DEFENDANT (S)

**Case Management Department 610**
**Case Management Order**

**NO. CGC-17-560372**

**Order Continuing Case**
**Management Conference**

TO: ALL COUNSEL AND SELF-REPRESENTED LITIGANTS

The Dec-27-2017 CASE MANAGEMENT CONFERENCE is canceled, and it is hereby ordered:

This case is set for a case management conference on Feb-07-2018 in Department 610 at 10:30 am.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than fifteen (15) days before the case management conference. However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

PLAINTIFF(S) must serve a copy of this notice on all parties not listed on the attached proof of service within five (5) days of the date of this order.

DATED: DEC-08-2017

TERI L. JACKSON
_____
JUDGE OF THE SUPERIOR COURT

CERTIFICATE OF SERVICE BY MAIL

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on DEC-08-2017 I served the attached Order Continuing Case Management Conference by placing a copy thereof in an envelope addressed to all parties to this action as listed below.  I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94102, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.

Dated :  DEC-08-2017                    By: JEFFREY LEE

CHARLES ADAMS BONNER (085413)
LAW OFFICES OF BONNER & BONNER
475 GATE 5 ROAD, STE 212
SAUSALITO, CA  94965

# Exhibit C

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>**CHARLES A. BONNER, ESQ. SBN: 85413**<br>**LAW OFFICES OF BONNER & BONNER**<br>**475 GATE FIVE ROAD, SUITE 212**<br>**SAUSALITO, CA 94965**<br>TELEPHONE NO.: **(415) 331-3070**   FAX NO.*(Optional):* **(415) 331-2738**<br>E-MAIL ADDRESS *(Optional):* **cbonner799@aol.com**<br>ATTORNEY FOR *(Name):* **PLAINTIFF** | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**01/22/2018**<br>**Clerk of the Court**<br>**BY:NEYL WEBB**<br>**Deputy Clerk** |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   **SAN FRANCISCO**
STREET ADDRESS:   **400 McALLISTER STREET**
MAILING ADDRESS:
CITY AND ZIP CODE:   **SAN FRANCISCO, CA 94102**
BRANCH NAME:

PLAINTIFF/PETITIONER:   **HIEU PHAM, DDS, MD**

DEFENDANT/RESPONDENT:   REGENTS OF UNIVERSITY OF CALIFORNIA, DR. A

| **CASE MANAGEMENT STATEMENT**<br>*(Check one):*  [X] **UNLIMITED CASE**     [ ] **LIMITED CASE**<br>(Amount demanded   (Amount demanded is $25,000<br>exceeds $25,000)   or less) | CASE NUMBER:<br>**CGC-17-560372** |
|---|---|

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date:  **FEBRUARY 7, 2018**   Time:  **10:30AM**   Dept.:  **610**   Div.:   Room:
Address of court *(if different from the address above):*

[ ]  Notice of Intent to Appear by Telephone, by *(name):*

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1.  Party or parties *(answer one):*
    a. [X] This statement is submitted by party *(name):*  **HIEU PHAM**
    b. [ ] This statement is submitted jointly by parties *(names):*

2.  Complaint and cross-complaint *(to be answered by plaintiffs and cross-complainants only)*
    a.  The complaint was filed on *(date):*   **OCTOBER 10, 2017**
    b. [ ] The cross-complaint, if any, was filed on *(date):*

3.  Service *(to be answered by plaintiffs and cross-complainants only)*
    a. [ ] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
    b. [X] The following parties named in the complaint or cross-complaint
        (1) [ ] have not been served *(specify names and explain why not):*

        (2) [X] have been served but have not appeared and have not been dismissed *(specify names):*
            **REGENTS OF UCSF, DR. ANTHONY POGREL, DR. BRIAN BAST**
        (3) [ ] have had a default entered against them *(specify names):*

    c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4.  Description of case
    a.  Type of case in  [X] complaint   [ ] cross-complaint   *(Describe, including causes of action):*
        **UNEQUAL PAY CASE WITH RETALIATION AND DISCRIMINATION UNDER FEHA,**
        **VIOLATION OF CALIFORNIA LABOR CODE 1197.5, VIOLATION LABOR CODE**
        **1102.5, CONSTRUCTIVE TRUST/FIDUCIARY DUTY, BAD FAITH BREACH OF CONTRACT,**
        **NEGLIGENCE**

Page 1 of 5

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

CEB | Essential
ceb.com | Forms

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720-3.730
www.courts.ca.gov

**HIEU PHAM**

**CM-110**

| PLAINTIFF/PETITIONER: HIEU PHAM, DDS, MD | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: REGENTS OF UNIVERSITY OF CALIFORNIA | CGC-17-560372 |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
    **PLAINTIFF ALLEGES PAIN AND SUFFERING, EMOTIONAL DISTRESS, LOSS OF PROPERTY, AND INJURY DUE TO UNEQUAL PAY**

   ☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
    The party or parties request  ☒ a jury trial  ☐ a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
    a.  ☐  The trial has been set for *(date):*
    b.  ☒  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

    c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
    The party or parties estimate that the trial will take *(check one):*
    a.  ☒  days *(specify number):*  6
    b.  ☐  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
    The party or parties will be represented at trial  ☒ by the attorney or party listed in the caption  ☐ by the following:
    a.  Attorney:
    b.  Firm:
    c.  Address:
    d.  Telephone number:                                f.   Fax number:
    e.  E-mail address:                                  g.   Party represented:
    ☐  Additional representation is described in Attachment 8.

9.  **Preference**
    ☐  This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
    a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
        (1)  For parties represented by counsel: Counsel  ☒ has  ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
        (2)  For self-represented parties: Party  ☐ has  ☐ has not reviewed the ADR information package identified in rule 3.221.
    b.  **Referral to judicial arbitration or civil action mediation** (if available).
        (1)  ☐  This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
        (2)  ☐  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
        (3)  ☐  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: **HIEU PHAM, DDS, MD** | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: REGENTS OF UNIVERSITY OF CALIFORNIA | **CGC-17-560372** |

10. c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form **are willing to** participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case have agreed to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☒ | ☒ Mediation session not yet scheduled <br> ☐ Mediation session scheduled for *(date):* <br> ☐ Agreed to complete mediation by *(date):* <br> ☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☒ | ☒ Settlement conference not yet scheduled <br> ☐ Settlement conference scheduled for *(date):* <br> ☐ Agreed to complete settlement conference by *(date):* <br> ☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled <br> ☐ Neutral evaluation scheduled for *(date):* <br> ☐ Agreed to complete neutral evaluation by *(date):* <br> ☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled <br> ☐ Judicial arbitration scheduled for *(date):* <br> ☐ Agreed to complete judicial arbitration by *(date):* <br> ☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled <br> ☐ Private arbitration scheduled for *(date):* <br> ☐ Agreed to complete private arbitration by *(date):* <br> ☐ Private arbitration completed on *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled <br> ☐ ADR session scheduled for *(date):* <br> ☐ Agreed to complete ADR session by *(date):* <br> ☐ ADR completed on *(date):* |

CEB | Essential
ceb.com | Forms

**HIEU PHAM**

CM-110

| PLAINTIFF/PETITIONER: **HIEU PHAM, DDS, MD** | CASE NUMBER: **CGC-17-560372** |
|---|---|
| DEFENDANT/RESPONDENT: **REGENTS OF UNIVERSITY OF CALIFORNIA** | |

11. **Insurance**
   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
   b. Reservation of rights: ☐ Yes ☐ No
   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

12. **Jurisdiction**
   Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
   ☐ Bankruptcy ☐ Other *(specify):*
   Status:

13. **Related cases, consolidation, and coordination**
   a. ☐ There are companion, underlying, or related cases.
      (1) Name of case:
      (2) Name of court:
      (3) Case number:
      (4) Status:
      ☐ Additional cases are described in Attachment 13a.
   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

14. **Bifurcation**
   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

15. **Other motions**
   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

16. **Discovery**
   a. ☐ The party or parties have completed all discovery.
   b. ☒ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| **PLAINTIFF** | **WRITTEN DISCOVERY** | **3/2018** |
| **PLAINTIFF** | **DEPOSITIONS** | **5/2018** |

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CEB | Essential
ceb.com | Forms

**CASE MANAGEMENT STATEMENT**

**HIEU PHAM**

CM-110

| PLAINTIFF/PETITIONER: **HIEU PHAM, DDS, MD** | CASE NUMBER: **CGC-17-560372** |
|---|---|
| DEFENDANT/RESPONDENT:  **REGENTS OF UNIVERSITY OF CALIFORNIA** | |

**17. Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20.** Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: **JANUARY 19, 2018**

**CHARLES A. BONNER**
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

    ☐ Additional signatures are attached.

**CASE MANAGEMENT STATEMENT**

CEB Essential eForms
ceb.com

**HIEU PHAM**

## PROOF OF SERVICE

1

2      I, the undersigned, hereby certify that I am over the age of eighteen years, employed in Marin

3 County California.  The business address is 475 Gate Five Road, Suite 212, Sausalito, California

4 94965.

5 **DOCUMENT(S) :    CASE MANAGEMENT STATEMENT**

6      I caused to be served a true copy of the above-named document(s) per the addressee(s) listed

7 below or per the attached list.

8                          (X) BY MAIL

9 **DELIA A. ISVORANU, ESQ.**
   **DUANE MORRIS LLP**
10 **ONE MARKET PLAZA, SPEAR TOWER, SUITE 2200**
   **SAN FRANCISCO, CA 94105**

11      I declare under penalty of perjury under the laws of the State of California that the foregoing

12 is true and correct.

13      Served and executed this  22th day of day of JANUARY   , 2018.

14

15

16 Matt McCulley

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit D

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
### 400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

HIEU PHAM DR

**PLAINTIFF (S)**

VS.

BOARD OF REGENTS OF THE UNIVERSITY
OF CALIFORNIA et al

**DEFENDANT (S)**

**Case Management Department 610
Case Management Order**

**NO. CGC-17-560372**

**Order Continuing Case
Management Conference**

---

TO: ALL COUNSEL AND SELF-REPRESENTED LITIGANTS

The Feb-07-2018 CASE MANAGEMENT CONFERENCE is canceled, and it is hereby ordered:

This case is set for a case management conference on Apr-04-2018 in Department 610 at 10:30 am.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than fifteen (15) days before the case management conference.  However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

PLAINTIFF(S) must serve a copy of this notice on all parties not listed on the attached proof of service within five (5) days of the date of this order.

DATED:  JAN-23-2018                 TERI L. JACKSON
_____

JUDGE OF THE SUPERIOR COURT

CERTIFICATE OF SERVICE BY MAIL

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on JAN-23-2018 I served the attached Order Continuing Case Management Conference by placing a copy thereof in an envelope addressed to all parties to this action as listed below.  I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94102, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.


Dated :  JAN-23-2018                    By: DARLENE LUM



CHARLES ADAMS BONNER (085413)
LAW OFFICES OF BONNER & BONNER
475 GATE 5 ROAD, STE 212
SAUSALITO, CA  94965

CERTIFICATE OF SERVICE BY MAIL
Form 000001

# Exhibit E

# DuaneMorris®

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

*FIRM and AFFILIATE OFFICES*

ANJULI M. CARGAIN
DIRECT DIAL: +1 415 957 3088
PERSONAL FAX: +1 415 520 0366
*E-MAIL: AMCargain@duanemorris.com*

*www.duanemorris.com*

February 6, 2018

VIA REGULAR MAIL

Charles A. Bonner, Esq.
Law Offices of Bonner & Bonner
475 Gate Five Road
Sausalito, CA 94965

**Re:** ***Pham v. Regents of the University of California, et al.***
San Francisco County Superior Court Case No. CGC-17-560372

Dear Mr. Bonner:

Enclosed please find the signed Notice and Acknowledgement of Receipt – Civil forms executed on behalf of Drs. Bast and Pogrel, in the above referenced matter.

Very truly yours,

DUANE MORRIS LLP

Anjuli M. Cargain

AMC
Enclosures

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| — CHARLES A. BONNER, ESQ.          SBN: 85413<br>**LAW OFFICES OF BONNER & BONNER**<br>**475 GATE FIVE ROAD**<br>**SAUSALITO, CA 94965**<br>TELEPHONE NO.: **(415) 331-3070**   FAX NO.*(Optional)*: **(415) 331-2738**<br>E-MAIL ADDRESS *(Optional)*:   **cbonner799@aol.com**<br>ATTORNEY FOR *(Name)*   **PLAINTIFF** | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   SAN FRANCISCO
STREET ADDRESS:   **400 McALLISTER STREET**
MAILING ADDRESS:
CITY AND ZIP CODE:   **SAN FRANCISCO, CA 94102**
BRANCH NAME:

PLAINTIFF/PETITIONER:   **HIEU PHAM, DDS, MD**

DEFENDANT/RESPONDENT: REGENTS OF UNIVERSITY OF CALIFORNIA, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL | CASE NUMBER:<br>**CGC-17-560372** |
|---|---|

TO *(insert name of party being served)*:   **DR. BRIAN BAST**

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: **JANUARY 17, 2017**

**MATTHEW McCULLEY**
                    (TYPE OR PRINT NAME)                                    ▶ _____
                                                                           (SIGNATURE OF SENDER-MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [X] A copy of the summons and of the complaint.   SECOND AMENDED COMPLAINT AND SUMMONS ON SECOND AMENDED COMP
2. [X] Other *(specify)*:
   **CASE MANAGEMENT ORDER**

*(To be completed by recipient)*:   2-6-18
Date this form is signed:

Anjuli Cargain
     (TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
      ON WHOSE BEHALF THIS FORM IS SIGNED)
                                                    ▶ _____
                                                    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
                                                     ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

**HIEU PHAM**

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| — CHARLES A. BONNER, ESQ.        SBN: 85413<br>LAW OFFICES OF BONNER & BONNER<br>475 GATE FIVE ROAD<br>SAUSALITO, CA 94965<br>TELEPHONE NO.: **(415) 331-3070**   FAX NO.(Optional): **(415) 331-2738**<br>E-MAIL ADDRESS (Optional): **cbonner799@aol.com**<br>ATTORNEY FOR (Name): **PLAINTIFF** | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   **SAN FRANCISCO**
STREET ADDRESS:  **400 McALLISTER STREET**
MAILING ADDRESS:
CITY AND ZIP CODE:  **SAN FRANCISCO, CA 94102**
BRANCH NAME:

PLAINTIFF/PETITIONER:  **HIEU PHAM, DDS, MD**

DEFENDANT/RESPONDENT: REGENTS OF UNIVERSITY OF CALIFORNIA, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL | CASE NUMBER:<br>**CGC-17-560372** |
|---|---|

TO (Insert name of party being served):  **DR. ANTHONY POGREL**

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:  **JANUARY 17, 2017**

**MATTHEW McCULLEY**
       (TYPE OR PRINT NAME)                            ► _____
                                                         (SIGNATURE OF SENDER-MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):
1. [X] A copy of the summons and of the complaint.   SECOND AMENDED COMPLAINT AND SUMMONS ON SECOND AMENDED COMP
2. [X] Other (specify):
   **CASE MANAGEMENT ORDER**

(To be completed by recipient):

Date this form is signed:  **2-6-18**

Anjuli Cargain
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)              ► anjuli Cargain
                                                   (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
                                                   ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]   CEB Essential Forms
ceb.com

NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

**HIEU PHAM**